```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```

```
MARCUS TERRY, a/k/a            (
MARCUS BENSON, a/k/a           (
TORIAN BENSON,                 (
                               (
     Petitioner,               (
                               (
vs.                            (        No. 05-2880-Ml/P
                               (
TONY PARKER,                   (
                               (
     Respondent.               (
                               (
```

ORDER DENYING LEAVE TO PROCEED <u>IN</u> <u>FORMA</u> <u>PAUPERIS</u>
ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Petitioner Marcus Terry, a/k/a Marcus Benson, a/k/a Torian Benson, Tennessee Department of Correction prisoner number 220847, an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a <u>pro se</u> petition pursuant to 28 U.S.C. § 2254 on November 25, 2005, along with a volume of supporting documents and an application seeking leave to proceed <u>in forma pauperis</u>. Because petitioner paid the habeas filing fee on December 23, 2005, the motion for leave to proceed <u>in forma</u>

pauperis is DENIED as moot.[1] The Clerk shall record the respondent as NWCX warden Tony Parker.[2]

I.   STATE COURT PROCEDURAL HISTORY

On April 17, 1997, a Shelby County Criminal Court jury convicted Terry of two counts of vehicular homicide arising out of an automobile collision on April 11, 1995. On June 6, 1997, Terry was sentenced as a Range III career offender to consecutive sentences of fifteen (15) years for each offense, meaning that he is eligible for release after serving sixty percent (60%) of his sentence. The Tennessee Court of Criminal Appeals affirmed. State v. Terry, No. 02C01-9708-CR-00313, 1998 WL 775651 (Tenn. Crim. App. Nov. 6, 1998), perm. app. denied (Tenn. Apr. 26, 1999).

Terry filed a pro se petition pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222, in the Shelby County Criminal Court on or about August 20, 1999. Terry filed pro se amendments to his petition on December 9, 1999 and February 1, 2000, and counsel was appointed to represent the petitioner. The postconviction court

---

[1] It is possible that the petitioner paid the filing fee twice. In addition to the payment by Marcus Terry, which was received on December 23, 2005 and recorded in the docket by the Clerk, it appears that the Clerk also received a five-dollar ($5.00) check from Torian Benson on March 21, 2005. As the check numbers differ, it does not appear that the Clerk issued two receipts for the same payment. If that is, in fact, the case, the Clerk is directed to refund the duplicate filing fee to the petitioner upon request.

[2] Although the petition lists Tennessee Attorney General Paul Summers as an additional respondent, the proper respondent to a habeas petition is the petitioner's custodian. See Rumsfeld v. Padilla, 124 S. Ct. 2711, 2718 (2004). The Clerk, appropriately, has not listed Paul Summers as a party to this action.

conducted an evidentiary hearing on March 24 and 28, 2000. On July 6, 2000, the postconviction court issued its findings of fact and conclusions of law dismissing the petition. The Tennessee Court of Criminal Appeals affirmed. Terry v. State, No. W2000-01747-CCA-R3-PC, 2002 WL 1482727 (Tenn. Crim. App. Feb. 8, 2002), perm. app. denied (Tenn. May 28, 2002).

Terry's sentences for the two vehicular homicides were enhanced because of his seventeen prior felony convictions. On or about August 26, 2002, Terry filed a petition for a writ of habeas corpus pursuant to Tenn. Code Ann. § 29-21-101 et seq. in the Lake County Circuit Court that challenged prior convictions obtained in 1986, 1989, and 1993. On October 29, 2002, the trial court denied the petition without appointing counsel or conducting an evidentiary hearing. The Tennessee Court of Criminal Appeals affirmed in an unpublished decision. Benson a/k/a Terry a/k/a Benson v. State, No. W2002-02756-CCA-R3-CO (Tenn. Crim. App. Apr. 23, 2003).[3] The state court explained its decision as follows:

> Although there is no documentation in the record before us indicating the nature of the charges upon which the Petitioner is currently confined, it is uncontested that the Petitioner is currently being confined on convictions unrelated to those challenged in the three convictions. It is obvious, therefore, that the writ of habeas corpus is not available to him at this time because if released from the confinement on the petitions filed herein, the Petitioner would still remain confined for, at least, an additional sixteen (16) years on the unrelated convictions. Thus, the Petitioner has no standing to complain that he is being illegally

---

[3] A copy of this decision is attached to the petition as Exhibit U.

>     restrained for the reasons contained in the petitions.
>     See State v. Bomar, 381 S.W.2d 287, 289 (Tenn. 1964).

Id., slip op. at 2. The petitioner filed a petition for rehearing, see Pet., Ex. V, which the Tennessee Court of Criminal Appeals denied in an unpublished order, Benson a/k/a Terry a/k/a Benson v. State, No. W2002-02756-CCA-R3-CO (Tenn. Crim. App. June 9, 2003) (per curiam).[4] The petitioner filed an application for permission to appeal, see Pet., Ex. X, and, on December 15, 2003, the Tennessee Supreme Court granted permission to appeal and appointed counsel to represent the petitioner, Benson a/k/a Terry a/k/a Benson v. State, No. W2002--2756-SC-R11-CO (Tenn. Dec. 15, 2003) (per curiam).[5] On December 16, 2004, the Tennessee Supreme Court affirmed the judgment of the Tennessee Court of Criminal Appeals upholding the dismissal of the petitions. Benson a/k/a Terry a/k/a Benson v. State, 153 S.W.3d 27 (Tenn. 2004). The Tennessee Supreme Court explained that, "[a]pplying the rule recently announced in Hickman v. State, 153 S.W.3d 16 . . . (Tenn. 2004), we hold that the petitioner is not currently 'imprisoned or restrained of liberty' by the challenged convictions because they expired prior to his filing for relief; therefore, he is not entitled to habeas corpus relief." Id. at 29.

II.   PETITIONER'S FEDERAL HABEAS CLAIMS

---

  [4]   A copy of this decision is attached to the petition as Exhibit W.

  [5]   A copy of this decision is attached to the petition as Exhibit Y.

4

In this federal habeas petition, Terry raises the following issues:

1. Whether the evidence is insufficient to prove the non-applicability of the duress defense beyond a reasonable doubt;

2. Whether trial and appellate counsel rendered ineffective assistance in violation of the Sixth Amendment;

3. Whether the two consecutive Range III fifteen-year sentences imposed on Terry were illegally enhanced by reliance upon void prior convictions, in violation of the Due Process Clause;

4. Whether the Tennessee Supreme Court's construction of Tenn. Code Ann. § 29-21-101 in Hickman v. State, 153 S.W.3d 16 (2004), is contrary to case law which governs statutory construction and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and

5. Whether each and every one of the petitioner's seventeen prior felony convictions is void.

III. ANALYSIS OF THE MERITS

The first issue to be addressed is the timeliness of this petition. Twenty-eight U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall begin to run from the latest of—

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

>>United States is removed, if the applicant was prevented from filing by such State action;
>
>>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and
>
>>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Application of these provisions with respect to the first two claims, which challenge the 1997 vehicular homicide convictions, is straightforward. State convictions ordinarily become "final" within the meaning of § 2244(d)(1)(A) when the time expires for filing a petition for a writ of certiorari from a decision of the highest state court on direct appeal. Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000). In this case, the Tennessee Supreme Court denied leave to appeal on April 26, 1999, and the time for filing a petition for a writ of certiorari expired ninety days later, on July 26, 1999,[6] at which time the limitations period began to run. The running of the limitations period was tolled, pursuant to 28 U.S.C. § 2244(d)(2), when Terry filed his

---

[6] Because the ninetieth day fell on Sunday, July 25, 1999, Terry had until the next day to file a timely petition. Sup. Ct. R. 30.1.

postconviction petition on August 20, 1999. By that time, twenty-five (25) days of the one-year limitations period had elapsed. The Tennessee Court of Criminal Appeals affirmed the dismissal of the postconviction petition on February 8, 2002, and the Tennessee Supreme Court denied permission to appeal on May 28, 2002. The running of the limitations period recommenced at the expiration of the time for filing a petition for a writ of certiorari, on August 26, 2002. Abela v. Martin, 348 F.3d 164 (6th Cir. 2003) (en banc), cert. denied, 541 U.S. 1070 (2004). At that time, three hundred forty (340) days of the limitations period remained, and the limitations period for Terry's first two claims expired on August 1, 2003. Terry's petition was signed on November 18, 2005, well after the expiration of the limitations period. Therefore, the first two claims are time barred.[7]

The one-year limitations period applicable to § 2254 motions is subject to equitable tolling. Griffin v. Rogers, 308 F.3d 647, 652-53 (6th Cir. 2002); see also Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001) (equitable tolling also applies to § 2255 motions). Five factors are relevant to determining the appropriateness of equitably tolling a statute of limitations:

---

[7] In his petition, Terry argues that the running of the limitations period did not recommence after the expiration of the time for filing a petition for a writ of certiorari with the United States Supreme Court on August 26, 2002 because he filed his state habeas petition on that date. Terry is mistaken. The state habeas petition filed by Terry on August 26, 2002 did not pertain to "the pertinent judgment or claim," 28 U.S.C. § 2244(d)(2), which were, in this case, the two 1997 vehicular homicide convictions.

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

Dunlap, 250 F.3d at 1008.[8]

The Sixth Circuit has stated that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500; see also Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

> Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. . . . Absent compelling equitable considerations, a court should not extend limitations by even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793, 795 (6th Cir. Mar. 27, 2003); Johnson v. U.S. Postal Serv., No. 86-2189, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when pro se litigant missed filing deadline by one day). Thus, ignorance of the law by pro se litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx. 110, 112 (6th Cir. Oct. 23, 2003); Harrison v. I.M.S., 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); Miller v. Cason, 49

---

[8] This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases. Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); Brown v. United States, 20 Fed. Appx. 373, 374 (6th Cir. Sept. 21, 2001) ("Ignorance of the limitations period does not toll the limitations period."); cf. Jurado, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[9]

Terry cannot satisfy his burden of demonstrating that equitable tolling would be appropriate in this case. The petition was filed more than two years after the expiration of the limitations period. For the reasons previously stated, Terry's apparent assumption that he could first exhaust his claims pertaining to the two vehicular homicide convictions and then wait to file a § 2254 petition while he attacked the validity of the convictions that were used to enhance his sentence was erroneous, and his ignorance of the law provides no basis for tolling of the limitations period.

Accordingly, the Court DISMISSES the first two claims as time barred.

Terry's third, fourth, and fifth claims challenge the validity of his seventeen prior felony convictions and argue that

---

[9] See also Cobas v. Burgess, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . . , and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

these invalid convictions were improperly used to enhance the sentences for his two 1997 vehicular homicide convictions. The Tennessee Supreme Court summarized these convictions as follows:

> On May 11, 1986, the petition pled guilty in Shelby County Criminal Court to four counts of larceny and six counts of robbery. The petitioner was sentenced to three years imprisonment for each larceny count and five years for each robbery count. All sentences were ordered to be served concurrently, resulting in an effective sentence of five years. On March 6, 1989, the petitioner entered guilty pleas to two counts of larceny and one count of aggravated assault. He was sentenced to three years for each count, all to be served concurrently, for an effective total sentence of three years.
>
> On January 4, 1993, the petitioner entered a guilty plea to one count of theft of property over $10,000 and was sentenced to four years imprisonment. On April 23, 1993, the petitioner pled guilty to unlawful possession of a controlled substance with intent to sell and was sentenced to a term of eight years. On September 3, 1993, the petitioner pled guilty to two counts of possession of a controlled substance and received an eight-year sentence for one count and a four-year sentence for the other. All of the 1993 convictions were ordered to be served concurrently.

Benson a/k/a Terry a/k/a Benson v. State, 153 S.W.3d at 29. The Court is unable to review the substance of these issues for the following reasons.

First, Terry's fifth claim, which challenges the validity of each of the underlying state convictions obtained in 1986, 1989, and 1993, is itself untimely. Petitioners whose convictions became final before the effective date of the AEDPA had a one-year grace period, until April 24, 1997, to seek federal habeas relief. Brown v. O'Dea, 187 F.3d 572, 577 (6th Cir. 1999), vacated on other

10

grounds, 530 U.S. 1257 (2000). The record before the Court is silent as to any direct appeals or postconviction petitions pertaining to these convictions, and Terry has not previously filed a § 2254 petition concerning any of these convictions. Accordingly, the fifth claim, which challenges the validity of each of the seventeen prior convictions, is time barred.[10]

Second, Terry is not entitled to use this § 2254 petition as a vehicle for challenging each of the expired state sentences that were used to enhance the sentence he is currently serving. In Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001), the Supreme Court held that

> once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

The Supreme Court recognized an exception to this general rule where there was a failure to appoint counsel with respect to a

---

[10] The filing of the state habeas petitions in 2002 did not toll the running of the limitations period with respect to these convictions because, by that time, the limitations period had already expired. Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("'The tolling provision does not . . . "revive" the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.'") (quoting Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)); Owens v. Stine, No. 01-1200, 27 Fed. Appx. 351, 353 (6th Cir. Oct. 2, 2001) ("A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

prior conviction in violation of Gideon v. Wainqwright, 372 U.S. 335 (1963). Coss, 532 U.S. at 404. Terry has not raised a Gideon issue with respect to any of his prior convictions and, therefore, he cannot challenge the use of these convictions to enhance his sentence for the two 1997 vehicular homicide convictions.[11]

Accordingly, Terry's third claim is without merit and is DISMISSED.

Finally, in his fourth claim for relief, Terry argues that the Tennessee Supreme Court's construction of Tenn. Code Ann. § 29-21-101 in Hickman v. State, 153 S.W.3d 16 (2004), is contrary to case law which governs statutory construction and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Although not clearly articulated in the petition, it appears that, by attacking the decision in Hickman v. State, 153 S.W.3d 16 (2004), on which the Tennessee Supreme Court relied in affirming the dismissal of his own state habeas petitions, Benson a/k/a Terry a/k/a Benson v. State, 153 S.W.3d at 31-32, he is asserting that the state court violated his due process rights by failing to reach the merits of his challenges to his prior

---

[11] The Supreme Court also assumed, without deciding, that there may be circumstances in which "a habeas petition directed at the enhanced sentence may effectively be the first and only forum available for review of the prior conviction," id. at 406, such as where "a state court [has], without justification, refuse[d] to rule on a constitutional claim that his been properly presented to it," id. at 405. As will be discussed infra, Terry's challenge to the decision of the Tennessee Supreme Court in Hickman does not satisfy this standard.

convictions.[12] However, because the Due Process Clause does not mandate that states provide avenues for collateral attacks on convictions, see United States v. MacCollom, 426 U.S. 317, 323 (1976) ("The Due Process Clause of the Fifth Amendment does not establish any right to an appeal . . . and certainly does not establish any right to collaterally attack a final judgment of conviction."); see also Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (states have no obligation to provide a postconviction review process), it necessarily follows that states need not permit attacks on stale convictions.

Accordingly, Terry's fourth claim is without merit and is DISMISSED.

IV. APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

---

[12] With respect to Terry's assertion that the Tennessee Supreme Court in Hickman failed to properly construe the language of Tenn. Code Ann. § 29-21-101, this Court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Error in the application of state law is not cognizable in a federal habeas proceeding. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Pulley v. Harris, 465 U.S. 37, 41 (1984). Accordingly, this Court has no authority to review the Tennessee Supreme Court's interpretation of Tennessee law.

>     (B)   the final order in a proceeding under section
>           2255.
>
> (2) A certificate of appealability may issue under
>     paragraph (1) only if the applicant has made a
>     substantial showing of the denial of a
>     constitutional right.
>
> (3) The certificate of appealability under paragraph
>     (1) shall indicate which specific issue or issues
>     satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require
> a showing that the appeal will succeed. Accordingly, a
> court of appeals should not decline the application of a
> COA merely because it believes the applicant will not
> demonstrate an entitlement to relief. The holding in
> Slack would mean very little if appellate review were
> denied because the prisoner did not convince a judge, or,
> for that matter, three judges, that he or she would

14

>  prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

>  A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurist would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[13]

In this case, there can be no question that this petition is time barred and, therefore, any appeal by this petitioner on any of the issues raised in this petition does not deserve attention. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to

---

[13] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

appeals of orders denying § 2254 petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 17th day of January, 2006.

                          <u>/s/ Jon P. McCalla</u>  
                           JON PHIPPS McCALLA  
                           UNITED STATES DISTRICT JUDGE